UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **KELVIN SULCER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-167-RLB** |
| **STATE OF LOUISIANA, THROUGH DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS OFFICE OF STATE POLICE** | **CONSENT** |

# ORDER

Before the Court is Defendant's Motion for Summary Judgment (R. Doc. 23) filed on September 20, 2018. Plaintiff filed an Opposition (R. Doc. 26) on October 23, 2018. Defendant filed a Reply (R. Doc. 32) on November 1, 2018, and Plaintiff filed a Sur-Reply (R. Doc. 35) on November 9, 2018. Oral argument was held on March 13, 2019. (R. Doc. 40). Accordingly, the Motion is ripe for review.

**I.    Background**

Kevin Sulcer ("Plaintiff") initiated this litigation with the filing of his Complaint (R. Doc. 1) on March 21, 2017. Therein, Plaintiff alleges that the State of Louisiana, through the Department of Public Safety and Corrections, Office of State Police ("Defendant") violated 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 based on his African American race and a discriminatory denial of the opportunity to work as a Polygraphist. (R. Doc. 1 at 10-11).

Plaintiff alleges that he is an African American employee of the Louisiana State Police ("LSP"), having been employed with LSP since September 13, 2004. (R. Doc. 1 at 2-3). Specifically, Plaintiff states that he "was and is a Trooper/Detective with LSP." (R. Doc. 1 at 3). During the course of his employment, Plaintiff alleges that he was not promoted from his position

as a trooper/detective to a polygraphist position due to his African American race. (R. Doc. 1 at 3).[1]
Plaintiff asserts that an opening for a polygraphist position was posted, and that LSP "handpicked an unqualified Caucasian employee to fill" the position. (R. Doc. 1 at 7). Plaintiff also asserts that he was denied the ability to promote because of his race and retaliation for prior complaints of racism, despite him having "more law enforcement experience." (R. Doc. 1 at 7).

Defendant seeks summary judgment as to all claims brought by Plaintiff. (R. Doc. 23). In its supporting Memorandum, Defendant suggests that Plaintiff testified in deposition that he saw the polygraphist position announcement in April of 2016 and sent an email to the State Police Commission inquiring about when a polygraph class would be offered. (R. Doc. 23-1 at 5). Defendant asserts that Plaintiff then contacted David McClendon, upon direction of the State Police Commission, who advised Plaintiff to speak with his own supervisors about polygraphist training, but that Plaintiff never did so. (R. Doc. 23-1 at 5-6).

Prior to the announcement of the polygraphist position, Defendant alleges that Plaintiff testified he learned in 2015 that Donny Guitreau—a Caucasian employee—had attended polygraphist school, but that Plaintiff had never expressed an interest in attending polygraphist school until the position was announced in 2016. (R. Doc. 23-1 at 6). Defendant posits that, after Guitreau "performed well" at polygraphist school, the State Police Commission revised the qualifications for a polygraphist position. (R. Doc. 23-1 at 8). Mr. Guitreau was then promoted to the polygraphist position.

---

[1] Plaintiff also brought claims for a discriminatory denial of the opportunity to work overtime and, arguably, an internal affairs and EEO investigation. However, Plaintiff represents in briefing that he is withdrawing all claims related to a discriminatory denial of the opportunity to work over time, and that the internal affairs and EEO investigation allegations are not separate, independent claims, but rather background information supporting his discriminatory denial of the opportunity to work as a polygraphist claim. (R. Doc. 26 at 13 n.63). Accordingly, the Court will address Defendant's Motion for Summary Judgment (R. Doc. 23) only in the context of Plaintiff's discriminatory denial of the opportunity to work as a polygraphist claim, the resolution of which will be the entirety of the claims that remain in this litigation.

**II.     Law and Analysis**

**A.     Legal Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id*. The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id*. A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139-40 (5th Cir. 1996). If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322-23.

In order to succeed on a claim for failure to promote on the basis of race, Plaintiff must establish that (1) he was within the protected class; (2) he applied for and was qualified for the position sought; (3) he was not promoted (i.e., he suffered an adverse employment action); and (4) the position he sought was filled by someone outside the protected class. *See McFall v. Gonzales*, 143 Fed. App'x 604, 607 (5th Cir. 2005). If a plaintiff makes this preliminary showing, the burden

3

shifts to the Defendant to show a legitimate, non-discriminatory reason for the action, which is a burden of production, not persuasion, and does not involve credibility assessment. *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007). If a defendant makes its showing, the burden shifts back to the Plaintiff to show the legitimate, non-discriminatory reason is merely a pretext for a discriminatory purpose. *McCoy*, 492 F.3d at 557.

    **B.**    **Analysis**

No party disputes that Plaintiff is within a protected class as he is African American. Thus, Plaintiff has met the first prong of his initial burden. There is also no dispute as to the third and fourth prongs of Plaintiff's prima facie case. No party disputes that Plaintiff was not promoted to the polygraphist position, and no party disputes that Mr. Guitreau, the employee who was promoted, is outside of the protected class, as he is Caucasian. The only question insofar as Plaintiff's prima facie case is concerned is the second prong, whether he applied for and was qualified for the position sought.

The second prong of Plaintiff's prima facie case comprises two parts for our purposes herein, the first being whether Plaintiff actually applied for the position sought. *See, e.g. Grice v. FMC Technologies, Inc.*, 2006 WL 5603934, at *5 (S.D. Tex. May 24, 2006) (granting summary judgment as to failure to promote claim based on lack of evidence plaintiff actually applied). Plaintiff does not allege that he applied for the polygraphist position, but rather that he was "denied the ability to apply/compete for positions because of his race." (R. Doc. 1 at ¶ 29). There is also no evidence submitted that Plaintiff applied for the position pursuant to the instructions in the job opening announcement. The evidence submitted by the parties shows that the polygraphist position was posted on April 22, 2016 and directed potential applicants to "fill out the information below and forward this application to" the State Police Commission. (R. Doc. 23-7). Plaintiff submitted an email chain that was initiated by him on April 25, 2016, wherein he states, "I'm interested in the

polygraphist position and any future polygraphist position [sic] that may become available in the future." (R. Doc. 26-12 at 4). There is no evidence that he attached the required application form and forwarded it to the State Police Commission as directed by the posting.

The Fifth Circuit has recognized some situations where a plaintiff can meet the application requirement of his prima facie case of discrimination without actually applying. In *Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 570 (5th Cir. 1988), the appellate court remanded a case based on its finding that the district court "failed to consider the fact that supervisory vacancies were not announced prior to 1982 and that no application process existed." The same is not true here, however, as there is no suggestion that vacancies were not announced or that no application process existed. The evidence here points to the contrary, as the parties attach a vacancy announcement that provides instructions as to the application process. Further, no party disputes that Plaintiff received the posting and that his April 25, 2016 email was in response to his receipt of the posting.

Notwithstanding this finding, in the case of *Adams v. Memorial Hermann*, 2018 WL 5886800, at *7 (S.D. Tex. Nov. 9, 2018), the district court denied summary judgment, finding that a plaintiff had met her prima facie burden despite not having actually applied where "a reasonable factfinder could conclude that Defendant prevented Plaintiff Adams from applying for a new position in light of the evidence." Viewing the evidence in the light most favorable to the non-moving Plaintiff, the Court finds that summary judgment is improper on this ground for several reasons. First, during the application period, Plaintiff initiated email contact with the State Police Commission, wherein he stated that he was "interested in the polygraphist position." (R. Doc. 26-12 at 4). In response, Ms. Givens appears to have addressed an inquiry in the original email seeking a list of polygraphist schools by attaching a file, but does not respond to Plaintiff's expressed interest in the polygraphist position, either by informing him that his email inquiry was insufficient to constitute application for the position or otherwise. A reasonable factfinder could potentially find

5

that Plaintiff had actually applied, or reasonably believed that no further action was required in order to actually apply, notwithstanding his failure to follow the directions of the posting.

Further, it is not clear whether the application process described in the posting was considered the sole method by which an employee could apply for a promotion, or whether there was a "relatively informal system of promotion." *See, e.g., Jinks v. Advanced Prot. Sys., Inc.*, 162 F.Supp. 2d 542, 549 (N.D. Tex. Apr. 4, 2001). Several allegations by the parties could lead a reasonable factfinder to conclude that the application process was, at times, informal. First, Plaintiff argues that the hiring and promotion process for the polygraphist position included the issuance of a certificate of eligibles, which certificate of eligibles is required under the Louisiana Constitution to contain the names of at least three (3) individuals for a position. (R. Doc. 26 at 10). The parties agree that the certificate of eligibles for the polygraphist position contained only the name of Mr. Guitreau. (R. Doc. 26 at 10). Deposition testimony of Cathy Derbonne, attached to Plaintiff's Motion, states that the preparation of a certificate of eligibles with less than three people is a violation of Civil Service Rules, and that she "fell through on that one." (R. Doc. 26-11 at 22). A reasonable trier of fact could conclude that the application process could, at least at times, fail to follow formal procedures and that, based upon the actions taken by Plaintiff, he actually applied for the position.

Second, Plaintiff cites the Declaration of Byron Sims, an African American former polygraphist for LSP, who states that he was selected to train to be a polygraphist after the announcement of the position, but also that the requirements of the position when it was posted were, in part, that the applicant "(i) already be trained as a polygrapher; or (ii) be willing to attend such training." (R. Doc. 26-10 at 1-2). The posting for the polygraphist position at the time that Mr. Sims applied has not been entered into evidence for the Court's consideration, so we are unable to ascertain whether being "willing to attend such training" was an explicit part of the job posting

6

(whereas such a standard is not part of the posting forming part of this litigation), or whether a willingness to attend such training was informally recognized as a possibility. There is at least a question of fact as to whether LSP had informally permitted persons to attend the requisite training *after* applying for a position, presumably at the request of a potential applicant, as is the case here.

Viewing the evidence in the light most favorable to the Plaintiff, there is a genuine issue of material fact as to whether the "actually applied" prong of the analysis has been met.

The analysis then turns to the question of whether Plaintiff was qualified for the position. An employer may establish job requirements and rely on them in arguing that a prima facie case is not established because the employee is not "qualified." However, only objective requirements may be used in making this argument. *Johnson v. Louisiana,* 351 F.3d 616, 622 (5th Cir. 2003). Defendant argues that Plaintiff has failed to prove that he was qualified for the polygraphist position. (R. Doc. 23-1 at 16). No party disputes that, when the polygraphist position was announced, the minimum qualifications were (1) a bachelor's degree from an accredited university or five years of law enforcement investigative experience; and (2) meeting the requirements of La. R.S. 37:2838.

The four requirements to receive a polygraphist certificate set forth in La. R.S. 37:2838 are as follows:

> (1) Has not been convicted of a felony or misdemeanor involving moral turpitude.
> (2) Is a high school graduate.
> (3) Is a graduate of a polygraph course of not less than two hundred and seventy hours requiring not less than six weeks duration, and has satisfactorily completed not less than six months of internship training.
> (4) Has passed an examination conducted by the board, or under its supervision, to determine his competency and integrity to obtain a certificate to practice as a certified polygraphist.

Plaintiff did not meet the requirements of La. R.S. 37:2838 insofar as he had not completed a qualifying polygraphist course and board examination. (R. Doc. 23-1 at 16). Plaintiff does not argue that he was qualified for the polygraphist position, but rather that the minimum standards for

7

qualification for the polygraphist position were changed so that Mr. Guitreau would be qualified for the position. (R. Doc. 26 at 9). Plaintiff's argument on this misses the point, however, as Plaintiff was not qualified for the position under either the prior or current version of the requirements, which necessitated that an applicant meet the requirements of La. R.S. 37:2838. There is also no question of fact that, at the time the position was posted, Mr. Guitreau was qualified, having at least 5 years of investigative experience and meeting the requirements of La. R.S. 37:2838.

The evidence is uncontroverted that Plaintiff did not express interest, inquire about or independently seek any information, training or education regarding a polygraph position prior to the announcement of the new opening. As such, there is no evidence that the announcement was intended to preclude plaintiff in any way, whether on the basis of race or for any other reason.[2] Furthermore, there is no evidence that Defendant somehow prevented Plaintiff from becoming qualified on the basis of his race.[3]

Plaintiff draws attention to the Declaration of Byron Sims, an African American former polygraphist for LSP. (R. Doc. 26-10 at 1-2). There is no evidence presented as to whether, at the time Mr. Sims applied, there were qualified applicants who had previously completed polygraphist training. His Declaration implies that there were not, as it states that he and one other trooper were selected to attend training, and then the position was re-posted, they applied and were selected for the position. (R. Doc. 26-10 at 1-2).[4]

---

[2] To accept otherwise would suggest that Plaintiff could claim discrimination for every job opening for which he was not qualified.

[3] An email chain produced by Plaintiff shows an email to Ms. Givens on April 25, 2016 wherein he stated he was interested in the polygraphist position, including any future positions that may become open, and requested information regarding polygraphist schools as he recognized that 37:2838 is a requirement. (R. Doc. 26-12 at 4). Ms. Givens is identified in the polygraphist announcement as the person to whom applicants are supposed to submit their application packets. (R. Doc. 26-12 at 1). In response, Ms. Givens attaches a list of polygraph schools. (R. Doc. 26-12 at 4). Plaintiff received another response from Ms. Givens on April 27, 2016, and when Plaintiff followed the instructions therein on April 27, 2016 and May 12, 2016, the next response he received was after the close of the position announcement on May 12, 2016, this time from Mr. David McClendon. (R. Doc. 26-12 at 3-4).

[4] Counsel for Defendants represented at the March 13, 2019 Oral Argument that there were no applicants that had previously attended polygraph school at the time of that posting.

Notwithstanding the fact that the prior position was filled by an African American, comparison of the former application process and outcome to the one at issue in this litigation is unwarranted. Plaintiff's argument that he should have been considered and hired for the position, and then allowed to attend polygraph school, in the same way it was handled during the application process wherein Mr. Sims was hired, carries little weight. Given the unanswered questions regarding the circumstances surrounding Mr. Sims' selection to a polygraphist position, as well as the fact that Mr. Sims is an African American who was actually promoted to a polygraphist position, the fact remains that he obtained the training and only then was promoted after the job announcement was re-announced. This does little to aid in Plaintiff's case.

Plaintiff also argues that the LSP did not follow proper policies and procedures in the hiring of Mr. Guitreau for the polygraphist position, and that its failure to follow those procedures was motivated by discriminatory purposes against Plaintiff. (R. Doc. 1 at 10). In his briefing, Plaintiff argues that the "certificate of eligibles" required by law contained only one name as opposed to the required three, and that Mr. Guitreau was not interviewed for the position contrary to internal policies. (R. Doc. 26 at 10-11). At the same time, Defendant sets forth evidence that Plaintiff was aware that Mr. Guitreau had attended polygraphist school in 2015, well before the April 22, 2016 job posting, but that Plaintiff never expressed interest in attending polygraphist school until after the polygraphist position had been posted. (R. Doc. 23-1 at 6; R. Doc. 23-4 at Deposition p. 93). Defendant also points to deposition testimony of Ms. Catherine Flinchum and Mr. Dupuy that Mr. Guitreau was informed his attendance at polygraphist school would not guarantee a position as a polygraphist. (R. Doc. 23-5 at Deposition p. 52; R. Doc. 23-6 at Deposition p. 55). The fact that proper policies or requirements were not followed in Mr. Guitreau's selection does not therefore support a conclusion that Plaintiff was qualified for the position.

Based on the foregoing, the summary judgment evidence shows that Plaintiff was not qualified for the position as he did not meet the objective requirements that were set forth and applied by Defendant.

Even if the Plaintiff were successful in making the required preliminary showing, summary judgment would still be appropriate. The Court turns to the second part of the analysis, i.e., whether Defendant has set forth a legitimate, non-discriminatory reason for promoting Mr. Guitreau to the polygraphist position, and not Plaintiff.

The April 22, 2016 polygraphist announcement requires a candidate to have "A baccalaureate degree from an accredited university **or** five (5) years of law enforcement investigative experience, **and** meet the requirements of LA Revised Statute 37:2838." (R. Doc. 26-12 at 1). By reference, La. R.S. 37:2838 states that a person "shall be qualified to receive a certificate as a polygraphist upon satisfying the following… (3) Is a graduate of a polygraph course of not less than two hundred and seventy hours requiring not less than six weeks duration, and has satisfactorily completed not less than six months of internship training." There is no question that these requirements are relevant and applicable to the position. There is no question that Plaintiff had not graduated from a qualifying polygraph course at the time of the posting and could not become qualified within the application period. Nor is there any question that Mr. Guitreau met the requirements of the job posting, having independently sought out such training and certification in advance. Defendant has met its burden of setting forth a legitimate, non-discriminatory reason for promoting Mr. Guitreau to the polygraphist position over Plaintiff.

Having found the first and second inquiries met, the Court turns to whether Plaintiff can show that Defendant's proffered reason for promoting Mr. Guitreau over Plaintiff was a pretext for racial discrimination, i.e., whether a reasonable trier of fact could conclude that Defendant's failure to promote Plaintiff to the polygraphist position was based on him being an African American.

10

Defendant suggests in briefing that, even assuming that Defendant had "hand-picked" Mr. Guitreau for the polygraphist position, and that the "hiring process for the position was 'unfair,' or even that it violated the spirit of civil service rules because there was no open competition," there is no evidence that Defendant acted to exclude Plaintiff *based on his race*. (R. Doc. 23-1 at 18).

In order to establish pretext, Plaintiff must show that Defendant's proffered reason "is false or unworthy of credence." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011). Proving pretext is a burden placed on a plaintiff. *See, e.g., Carr v. Sanderson Farms, Inc.*, 665 Fed. App'x 335, 338 (5th Cir. 2016) (citing *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 347 (5th Cir. 2013) ("If the defendant meets this burden, 'the onus shifts back to the plaintiff' to provide substantial evidence that the given reason is merely pretext or that the stated reason 'is only one of the reasons… and another 'motivating factor' is the plaintiff's protected characteristic.'"). In support of his position that Defendant's proffered reason is pretextual, Plaintiff submits (1) statistical evidence regarding the racial makeup of the Louisiana State Police; (2) the testimony of Ms. Cathy Derbonne; (3) examples of Defendant's failure to follow certain rules, policies, and/or procedures during the application and promotion process; and (4) evidence that Defendant altered the position requirements resulting in Mr. Guitreau being qualified.

The undisputed facts are that Plaintiff learned in 2015 that Mr. Guitreau had attended a polygraphist school, as Plaintiff testified in his deposition. (R. Doc. 20-6 at 25 (deposition p. 97)). After Mr. Guitreau attended the school, the requirements for being a polygraphist were revised from the previous announcements, which change effectively made Mr. Guitreau qualified for the position. (R. Doc. 20-7 at 13-14 (deposition pp. 50-56)). The opening was posted on April 22, 2016. On April 25, 2016, Plaintiff communicated via email to Ms. Givens, expressing interest in the polygraphist position as well as future polygraphist positions, and asking for information on attending polygraphist school. (R. Doc. 26-12 at 4).

Plaintiff does not argue that he expressed interest in becoming a polygraphist or attending polygraphist school at any point prior to April 25, 2016, and testifies at his deposition that he did not make a request to go to polygraph school after he learned that Mr. Guitreau had attended the school. (R. Doc. 20-6 at 26 (deposition p. 100)). Therefore, (1) at the time Mr. Guitreau attended polygraph school, (2) at the time the requirements for becoming a polygraphist were revised, and (3) at the time the opening for the polygraphist position was posted, Plaintiff has set forth no evidence showing Defendants were even aware of his interest in becoming a polygraphist. To support a showing that the Defendant's reason for hiring Mr. Guitreau was a pretext for racial discrimination, the Defendants would have to know that the Plaintiff was or would be interested in the polygraphist position, that Defendants changed the requirements to prevent Plaintiff from being qualified and did so on the basis of Plaintiff's African American race. Defendants could not have discriminated against Plaintiff when it allowed Mr. Guitreau to attend polygraph school, established the requirements for becoming a polygraphist, and posted the opening for the polygraphist position, without even knowing that Plaintiff was interested in the position or becoming a certified polygraphist. It may be that Mr. Guitreau was sent to polygraph school and the requirements revised so that Mr. Guitreau would be qualified for the position. There facts, however, do not establish that Plaintiff was discriminated against because of his African American race, because there is no evidence that Defendants were even aware of Plaintiff's interest in the position until after it was posted.

Plaintiff also sets forth several examples regarding particular rules or policies being changed or ignored in order to favor Mr. Guitreau. The problem with this argument is, however, that in order to establish racial discrimination, it does not matter if an employer favored a particular employee. What matters is whether the employer disfavored a plaintiff on the basis of his race. *See, e.g., Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether

an employer made an erroneous decision; it is whether the decision was made with discriminatory motive."). None of the evidence offered by Plaintiff regarding how Defendant allegedly favored Mr. Guitreau has any nexus to race or racial underpinning. Plaintiff's argument is essentially that, since Mr. Guitreau was promoted and he is Caucasian, and Plaintiff was not promoted and he is African American, the only possible reason for the difference is race.

At oral argument, counsel for Plaintiff stressed the application of *Moss v. BMC Software, Inc.*, 610 F.3d 917 (5th Cir. 2010), to the analysis of pretext, particularly for the proffered concept that evidence of pretext is sufficient to survive summary judgment when the person promoted became qualified for the position only after a change in the job requirements.[5] In *BMC Software*, the Fifth Circuit suggested that "[a]n employer's reliance on a previously unmentioned job requirement to justify a challenged hiring decision would raise a genuine issue of material fact as to pretext."

The Court does not find *BMC Software* applicable. First, the instant case does not involve an employer's reliance on a previously unmentioned job requirement to justify a challenged hiring decision. The qualifications set forth in the announcement were the same ones used to hire Mr. Guitreau. Plaintiff did not meet those qualifications. Second, nothing in the announcement was ever "changed." This case involves one job announcement for one opening. That the qualifications were not identical to the position in the past is not equivalent to reviewing the applicants and then changing the qualifications to avoid hiring a particular individual.[6]

---

[5] In *BMC Software*, the Fifth Circuit cites with authority *Bergene v. Salt River Project Agr. Imp. and Power Dist.*, 272 F.3d 1136, 1143 (9th Cir. 2001). In that case, the plaintiff was qualified for the position as it was originally posted and applied for the position, and then the requirements were changed such that another person became qualified and was eventually chosen. This evidence was only one of three pieces of "circumstantial evidence" the Ninth Circuit aggregated to conclude there was sufficient evidence of pretext to survive summary judgment. *Bergene*, 272 F.3d at 1143. The *Bergene* court also noted (1) that candidates were evaluated on their supervisory experience, a criteria not listed in the initial job posting, (2) that the plaintiff was referred to as "Mommy" in the work place, which the court found to be evidence that she was singled out in the workplace on the basis of her sex, and (3) that there were no women supervisors during the plaintiff's tenure with the employer. *Bergene*, 272 F.3d at 1143. The facts of the instant case are easily distinguishable.

[6] In fact, based on the affidavit by Mr. Sims, it appears that he was not selected for the position until after he completed the necessary training, the position was reposted, he re-applied, and only then was selected. (R. Doc. 26-10 at 1-2).

Ultimately, the only evidence offered by Plaintiff that suggest racial motivation is statistical evidence and the testimony of Ms. Cathy Derbonne. The Court acknowledges that "[s]tatistical evidence can be utilized by an individual disparate treatment plaintiff to help rebut the employer's non-discriminatory explanation" *Bauer v. Albemarle Corp.*, 169 F.3d 962, 968 (5th Cir. 1999). However, "more than statistics are usually necessary to rebut an employer's strong showing of a legitimate, non-discriminatory reason for [an adverse employment decision]." *Id.* Here, Plaintiff offers data regarding the racial makeup of Louisiana State Police and Department of Public Safety employees, promotions in 2015, professional positions held in 2015, and an Affirmative Action Plan. (R. Doc. 26 at 7-8).

While the statistical data cited by Plaintiff shows the racial makeup of groups of employees and promotions obtained, there is no application or other data or analysis against which to compare. For example, Plaintiff cites data reflecting "of about 1064 LSP employees in 2016, 173 LSP employees (16.26%) were Black, whereas 864 LSP employees (81.20%) were Caucasian." (R. Doc. 26 at 7). With no evidence regarding the racial makeup of applicants versus actual hires, the change of racial makeup over previous years, or even when these employees were hired, no conclusions can be drawn regarding the hiring and promotion practice at the time the instant polygraph position was filled. The Affirmative Action Plan cited by Plaintiff identifies a data year of 2015 and an Affirmative Action Plan year of 2016. (R. Doc. 26-23 at 1). Contrary to Plaintiff's arguments, the Affirmative Action Plan appears to reflect a tangible effort by the Louisiana State Police to ensure that minorities are adequately represented in the workforce in 2016. The statistical data provided by Plaintiff is insufficient to establish pretext on its own.

Furthermore, the data provided by Plaintiff regarding the 2016 Affirmative Action Plan shows that there was an African American polygraphist with LSP Troop B/Region 1 (R. Doc. 26-19 at 8) and a white polygraphist with Internal Affairs (R. Doc. 26-19 at 5). It cannot be deduced from

14

this data that the Louisiana State Police discriminates against African Americans for polygraphist positions as 50% of their polygraphists were African American until, presumably, April of 2018 when Mr. Byron Sims retired.[7] Mr. Sims stated in his Declaration that he became a polygrapher in 2006 and held that position until his retirement in 2018, for twelve years. (R. Doc. 26-10 at 1). He stated that two polygraphers retired in 2006, and that the two open positions were filled by himself (an African American), and Mr. Mills (a Caucasian). (R. Doc. 26-10 at 1).

"While statistical evidence may be used to show discrimination, 'their usefulness depends on all the surrounding facts and circumstances.'" *Cooper v. University of Texas Health Science Center at Tyler*, 2018 WL 1147542, at *7 (E.D. Tex. Feb. 5, 2018) (citing *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 340 (1977)). Given the deficiencies in Plaintiff's statistical data, the Court finds that its contents do not provide competent summary judgment evidence by which a reasonable trier of fact could conclude that Defendant's legitimate, non-discriminatory reason was pretextual.

Plaintiff also cites the deposition testimony of Ms. Derbonne that African American employees received harsher discipline than Caucasian employees, as well as her impression of the racial makeup of certain departments. (R. Doc. 26-11 at Deposition pp. 21-22, 25-26). One of the examples she gives for her assertion regarding discipline is an African American trooper being terminated after getting a DWI, while a Caucasian trooper got a DWI without being terminated. (R. Doc. 26-11 at Deposition pp. 60-61). There is very little information provided regarding the circumstances surrounding each of these DWIs, however, and Ms. Derbonne even suggests that the African American trooper who received a DWI may have been involved in an accident that resulted

---

[7] Plaintiff states in briefing that there are no "Black Technical Support Officers or polygraphists," and cites to his own Declaration. (R. Doc. 28-25). Mr. Sims represents in his Declaration that he was a polygraphist for LSP from September 2006 through his retirement in April of 2018. (R. Doc. 26-10). Accordingly, while it may be accurate that there are currently no African American polygraphists, Mr. Sims's Declaration provides at least some relevant context.

in his vehicle being in the woods, or illegal aliens drove his vehicle into the woods. (R. Doc. 26-11 at 60-61). Like the statistical evidence provided, two troopers receiving different discipline as a result of DWIs cannot be viewed in a vacuum, and inferences of discrimination cannot be drawn where there are other plausible explanations or necessary additional information is missing.

Ms. Derbonne's deposition testimony also provides further support for Defendant's position that it had a legitimate, non-discriminatory reason for revising the requirements for the polygraphist position at issue. Ms. Derbonne stated that the reason Mr. Dupuy requested the change to include law enforcement investigative experience as an alternative to a bachelor's degree was "because of the American – admissions standards of the majority of polygraphist schools." (R. Doc. 26-11 at Deposition p. 29). When asked a follow up question on this, Ms. Derbonne states the change was made "[t]o conform with this admissions standard of the majority, yes." (R. Doc. 26-11 at Deposition p. 30). Ms. Derbonne was also questioned as to whether Mr. Dupuy told her that the change in requirements was because he wanted Mr. Guitreau to be in the position, or because he did not want Plaintiff to be in the position, and she responded to both inquiries, "No, sir." (R. Doc. 26-11).

Where Ms. Derbonne discusses disparate treatment based on race, much of her testimony indicates subjective conclusions drawn from the circumstances, rather than any evidence of discrimination. "Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence." *Levias v. Texas Dep't of Criminal Justice*, 352 F.Supp. 2d 751, 759 (S.D. Tex. 2004) (citing *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996)). *See also Williams v. United Parcel Serv., Inc.*, 2018 WL 2187052, at *6-7 (M.D. La. May 11, 2018), *aff'd*, 2018 WL 6629229 (5th Cir. 2018).

In summary, the Court concludes that Plaintiff has not set forth sufficient summary judgment evidence that Defendant's proffered legitimate, non-discriminatory reason for promoting

Mr. Guitreau, and not Plaintiff, to the polygraphist position was pretextual. The evidence offered by Plaintiff, from his statistical submissions, the testimony of Ms. Cathy Derbonne, and his own testimony and arguments, provide no reasonable inference that Plaintiff was passed over for the promotion to polygraphist because of his race. Without any evidence from which a reasonable juror could conclude that Defendant failed to promote Plaintiff to the polygraphist position on the basis of his race, summary judgment in favor of Defendant is appropriate on this basis as well.

**III.    Conclusion**

Based on the foregoing, the Motion for Summary Judgment (R. Doc. 23) of Defendant, the State of Louisiana through the Department of Public Safety and Corrections, Office of State Police is **GRANTED**, and Plaintiff's claims are dismissed with prejudice.

Signed in Baton Rouge, Louisiana, on April 10, 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**